UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**JAMES PADRTA**,                                    Civil Case No. 3:12-CV-01521-KI

                Plaintiff,

                              OPINION AND ORDER

                v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

                Defendant.


        Bruce Brewer
        P.O. Box 421
        West Linn, Oregon  97068

                Attorney for Plaintiff

        S. Amanda Marshall
        United States Attorney
        District of Oregon

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204

Jordan D. Goddard
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff James Padrta brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

Page 2 - OPINION AND ORDER

§§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the Administrative Law Judge ("ALJ").  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the

claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is unable to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. Id.

## THE ALJ'S DECISION

The ALJ found Padrta had severe impairments of cannabis dependence, personality disorder NOS, major depressive disorder, and back pain with minimal degenerative disc disease. The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R.

§ 404, Subpart P, Appendix 1.  After reviewing the record, the ALJ found Padrta had the residual functional capacity to perform medium work.  He was limited to simple, routine, repetitive work with no public contact and performed best alone and not as part of a team.  Based on vocational expert testimony, the ALJ found Padrta could work as a janitor or laundry worker.

**FACTS**

Padrta alleges he became disabled on March 1, 2008, when he was 46 years old, because of bipolar disorder, depression, ADHD, a back injury, and insomnia.  He has a bachelor's degree in general studies which took ten years to obtain.  Padrta has worked as a car salesman, security guard, and truck driver.  He is homeless and stays in a warehouse a friend rents to grow medical marijuana.

Padrta complains of difficulty getting along with people and pain in his lower back, which he treats with medical marijuana.  He sees a counselor but has only taken prescription psychotropic medication intermittently because of gastrointestinal side effects.  Padrta claims to have constant and debilitating pain, the inability to stand or walk for extended periods of time, the need to take frequent rests, anger and frustration when dealing with people, periods of depression and anxiety, the inability to sleep except very rarely, and an ongoing desire to commit suicide.

**DISCUSSION**

I.    Credibility of Subjective Symptom Testimony

The ALJ gave several reasons to support his finding that Padrta lacked credibility when describing the severity of his symptoms.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  Id.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holahan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings are insufficient to support an adverse credibility determination, and the ALJ must rely on substantial evidence.  Id.  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Padrta claims the ALJ failed to give clear and convincing reasons for rejecting his testimony.  I will discuss the specific reasons in detail below.

The Commissioner relies on examining psychologist Dr. Cogburn's rule-out diagnosis of malingering.  In February 2011, Dr. Cogburn found Padrta's statements were inconsistent with the medical record, he was evasive and irritable, and his personality testing profile was invalid.  I do not see that the ALJ made a finding of malingering, so I will use the clear and convincing reason standard.  Nevertheless, Dr. Cogburn's opinion of Padrta's credibility is one clear and

convincing reason for the ALJ to discredit Padrta. Efforts to impede accurate testing of limitations are valid reasons to find that a claimant lacks credibility. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Additionally, the ALJ twice noted Padrta alleged he was incapable of all work activity.

Padrta argues he claimed inability to predictably sustain competitive employment on a daily basis and never claimed he was unable to do all basic work activities. Padrta thus argues it was error for the ALJ to reject his credibility on the ground Padrta claimed, but could not prove, the total inability to do all basic work activities.

The Commissioner argues the ALJ used these terms in a common sense fashion and not to indicate Padrta alleged he was incapable of any task, even for a brief period. I agree with the Commissioner–Padrta is reading too much precision into the ALJ's comment. I interpret the ALJ to mean Padrta could not perform a full-time, competitive job. Moreover, I do not understand the ALJ to use this allegation as a reason to discredit Padrta. The ALJ mentions the allegation as a summary of Padrta's explanation of his abilities.

Padrta contends his work history, including part-time work just before his alleged onset date, is not a valid reason to discredit his testimony. The ALJ noted Padrta's work history had long gaps before his alleged onset date, which caused the ALJ concern as to whether Padrta's continuing unemployment is actually due to his medical impairments. A spotty work history is a valid reason to reject testimony. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ also observed Padrta earned $1,910 for a single month's work in January 2009. These earnings do not constitute substantial gainful activity, but the ALJ reasoned they indicated

Padrta's daily activities, at times, were greater than he generally reported.  This is a clear and convincing reason to disbelieve Padrta.

Padrta claims the ALJ's reasoning that the overall medical record suggests Padrta is not totally incapable of working is too vague to constitute a clear and convincing reason.  Padrta similarly contends the ALJ's references to largely normal examination results, conservative treatment modalities, possible exaggeration, lack of psychiatric hospitalizations, life stress, and lack of compliance are too vague because the ALJ did not specify how Padrta could have acted differently to bolster his credibility.

The ALJ discussed the medical record at length for three pages of his opinion and compared the healthcare provider's findings with Padrta's allegations.  The analysis is not vague in any way.  Many of the reasons the ALJ gave, such as largely normal examination results, do not anticipate any different behavior on Padrta's part.  For others, such as lack of compliance with medication regimens, Padrta's role is clear–he needed to take prescribed psychotropic medications long enough to see if the side effect would subside and the medication would be helpful.  These reasons are all clear and convincing ones to discredit a claimant, and they are all supported by substantial evidence in the record.

Padrta argues the ALJ improperly used his criminal history to undermine his credibility because the ALJ did not explain how the two were related.  The ALJ explained that when questioned about some of his criminal history, and his current marijuana use, Padrta became evasive at both the hearing and when questioned by several healthcare providers.  An ALJ may rely on a claimant's demeanor at the hearing as an allowable ordinary technique of credibility

evaluation.  Thomas, 278 F.3d at 960.  This is another clear and convincing reason for the ALJ to

discredit Padrta.

I also note the ALJ relied on Padrta's poor effort in a physical examination and

inconsistent reports of hallucinations to his medical providers.  These are additional clear and

convincing reasons supported by substantial evidence to discredit Padrta.

The ALJ did not err in finding Padrta was not credible.

II.    Opinions of Healthcare Providers

Padrta argues the ALJ improperly rejected the opinions of several healthcare providers.

The weight given to the opinion of a physician depends on whether the physician is a

treating physician, an examining physician, or a nonexamining physician.  More weight is given

to the opinion of a treating physician because the person has a greater opportunity to know and

observe the patient as an individual.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  If a

treating or examining physician's opinion is not contradicted by another physician, the ALJ may

only reject it for clear and convincing reasons.  Id. (treating physician); Widmark v. Barnhart,

454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another

physician, the ALJ may not reject the opinion without providing specific and legitimate reasons

supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at

1066.

A.    Dr. Robinann Cogburn, Ph.D.

Padrta contends the ALJ silently failed to apply Dr. Cogburn's opinion that Padrta is

likely to benefit from a highly structured work setting, even though the ALJ acknowledged the

need for the limitation.

The Commissioner argues Dr. Cogburn's opinion was a recommendation for an optimal work environment for Padrta, not an imperative for maintaining a job, and thus was not required to be part of the residual functional capacity. Alternatively, the Commissioner claims the ALJ's limitation of routine and repetitive work sufficiently accounts for Dr. Cogburn's recommendation.

Dr. Cogburn interviewed Padrta and administered six written psychological tests. In her recommendations, she noted Padrta's capacity for employment was difficult to assess because of testing validity concerns, particularly due to possible exaggeration of psychiatric complaints. She also recommended: (1) he was likely to succeed most easily in jobs where tasks involve manipulation of objects and where speed demands are minimal; (2) he was likely to benefit from a highly structured work setting where tasks are well defined, expectations are clear, and accountability is transparent; and (3) he was likely to succeed most easily in a setting where interpersonal contact is minimal and highly structured. Padrta claims the ALJ failed to account for the second recommendation in the residual functional capacity in which Padrta is limited to simple, routine, and repetitive work with no public contact and with the added limitation Padrta would perform best alone and not as part of a team.

I agree with the Commissioner that Dr. Cogburn did not phrase her second recommendation as a requirement for Padrta to be able to work full-time. The recommended work setting would "likely benefit" Padrta but he could work with less than optimal conditions. The residual functional capacity represents the most, not the least, an individual can do on a regular and continuing basis despite his limitations or restrictions. SSR 96-8p. Thus, there was

no need to put the recommendation, as stated by Dr. Cogburn, into the residual functional

capacity because it did not represent the most Padrta could do.

Alternatively, I do not interpret Dr. Cogburn's recommendation to mean Padrta can only

work in a noncompetitive position or a sheltered workshop. The residual functional capacity's

limitation to simple, routine, and repetitive work satisfies Dr. Cogburn's recommendation for a

highly structured work setting with well-defined tasks. The ALJ did not err.

B.    Psychiatric Mental Health Nurse Practitioner Anna Cox

On September 8, 2011, Cox stated Padrta's ability to work on a full-time basis was

limited by the problematic behavioral issues he suffered for years, including poor emotional

regulation, problems with accepting responsibility or tolerating authority, feelings of entitlement,

impaired empathy and impulse control. Because of these issues, in Cox's view, Padrta never

married, had an extremely limited social support network, and had no history of long-term

employment. Cox opined Padrta's ability to contribute in the workforce appeared to be so

limited as to render him an excellent candidate for Social Security disability.

Padrta claims the ALJ improperly rejected the opinion of Cox for not being an acceptable

medical source under the regulations, for basing her conclusion on Padrta's subjective

complaints, because of his work activity before the alleged onset date, and because her opinion is

contradicted by Dr. Cogburn.

The ALJ gave Cox's opinion little weight for several reasons. He first explained Cox, as

a psychiatric mental health nurse practitioner, was a treating provider but not an acceptable

medical source.

Acceptable medical sources include licensed physicians, licensed psychologists, licensed optometrists, and licensed podiatrists. 20 C.F.R. § 404.1513(a). Nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists are considered other medical sources. Id. § 404.1513(d)(1). The ALJ may discount testimony from other medical sources by giving reasons germane to each witness. Molina, 674 F.3d at 1111. The opinion of a nurse practitioner is considered the opinion of an "acceptable medical source" to the extent the nurse practitioner works closely with and is supervised by an acceptable medical source. Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011). There is no evidence that occurred here, however, so the ALJ is only required to give a germane reason to reject Cox's opinion.

The ALJ found Cox's opinion appeared to be based entirely on Padrta's subjective complaints and not on any objective assessments. This appears correct–Cox did not perform psychological testing. Because the ALJ properly discredited Padrta's subjective complaints, this is a valid, germane reason to give little weight to Cox's opinion. Credibility determinations bear on the evaluation of medical evidence when there are conflicting medical opinions or inconsistency between a claimant's subjective complaints and his diagnosed conditions. Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005).

The ALJ additionally noted Cox's opinion was inconsistent with Dr. Cogburn's. An opinion from an acceptable medical source "may justify giving that opinion greater weight than an opinion from a medical source who is not an acceptable medical source because . . . acceptable medical sources are the most qualified health care professionals." SSR 06-03p (internal quotations omitted). Thus, this is a second germane reason to reject Cox's opinion.

The ALJ also reasoned Cox's opinion was inconsistent with Padrta's work history, which showed a sustained ability to work at times. Cox reported Padrta suffered from his behavioral problems for years, resulting in no history of long-term employment. But he had earnings between $19,532 and $28,559 for three years and earnings of approximately $12,000 in three other years. An ALJ may reject a doctor's opinion that a claimant is unable to work when the claimant has a history of success in education and work, in spite of long term limitations. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ may reject a doctor's opinion of disability when a claimant's long-term limitations did not prevent her from completing high school, obtaining a college degree, finishing a Certified Nurses' Aide training program, and participating in military training).

In sum, the ALJ gave three germane reasons for rejecting Cox's opinion.

C.      Counselor Ross Higerd

On March 9, 2011, Padrta's treating counselor for five months, Ross Higerd, MA, QMHP,[1] completed a mental residual functional capacities form in which he opined Padrta was markedly limited in his activities of daily living; had marked difficulties in maintaining social functioning; had marked difficulties in maintaining concentration, persistence, or pace; and had marked episodes of decompensation, each of extended duration. Higerd also concluded Padrta would miss six or more days of work a month because of his psychological symptoms.

The ALJ rejected the opinion of counselor Higerd because he was not an acceptable medical source, because his opinion was contradicted by Dr. Cogburn's opinion, and because he

---

[1]  Qualified Mental Health Professional.

did not consider Padrta's past somewhat successful work history. Padrta contends the reasons are invalid.

Higerd is an "other medical source," so the ALJ can reject his opinion by giving a germane reason. These reasons are germane ones, as explained in my analysis of the rejection of Cox's opinion.

The ALJ was also concerned Higerd did not adequately consider Padrta's marijuana dependence, his evasive statements about its medical usage, and the likely negative motivational impact of marijuana on Padrta's ability to maintain competitive employment.

Padrta's counsel sent the Appeals Council a form on which counselor Higerd indicated Padrta's levels of impairment were independent from his marijuana use. This does not account for Padrta's evasiveness when questioned about his marijuana usage. This germane reason continues to be supported by substantial evidence, even in light of the additional explanation sent to the Appeals Council.

Accordingly, the ALJ gave several germane reasons to reject Higerd's testimony.

D.    Dr. John Adler, Ph.D.

Padrta contends the ALJ improperly rejected the opinion of Dr. Adler for inconsistency concerning Padrta's marijuana use.

Dr. Adler performed a psychodiagnostic evaluation of Padrta on July 21, 2009. He diagnosed major depressive disorder, recurrent, unspecified; polysubstance abuse; rule out ADHD; rule out bipolar disorder, NOS; and personality disorder, NOS, antisocial features. Dr. Adler's overall impression was that Padrta was chronically unstable mentally with depression, anger, impulsivity and poor coping, along with a history of substance abuse. He also

believed Padrta might be minimizing his alcohol/drug problems, given his lack of treatment despite two DUIIs.  Padrta told Dr. Adler he last used marijuana earlier in the month.  Dr. Adler did not state specific limitations for Padrta's employment or opine he could not work.

I will assume Dr. Adler's opinion that Padrta was chronically mentally unstable meant Padrta either could not work or required limitations beyond the ALJ's residual functional capacity.  Dr. Adler's opinion was contradicted by Dr. Cogburn and the state agency physicians; thus, the ALJ must give specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Adler's opinion.

The ALJ gave significant weight to Dr. Adler's diagnostic opinion but little weight to his overall impression of Padrta.  The ALJ's reasons were that Dr. Adler did not adequately consider Padrta's evasive statements about his marijuana use, the impact of his marijuana use on his ability to maintain competitive employment, or his past work history.  As I explained above, these reasons are all supported by substantial evidence in the record, and I find them to be specific and legitimate.  The ALJ did not err by rejecting Dr. Adler's opinion.

III.    Evidence Submitted to the Appeals Council

Padrta notes the ALJ questioned his credibility and the opinions of his treating sources concerning his medical marijuana use and whether he had the appropriate state card.  He argues the Appeals Council did not adequately re-analyze the ALJ's decision after Padrta submitted the card to the Appeals Council.

Padrta submitted new evidence to the Appeals Council consisting of documentation for the Oregon Medical Marijuana Program for the one-year periods beginning October 25, 2010 and December 16, 2011.

Page 15 - OPINION AND ORDER

Additional evidence presented to the Appeals Council but not seen by the ALJ must be considered in determining if the ALJ's denial of benefits is supported by substantial evidence. Brewes v. Comm'r Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012).

The Commissioner argues Padrta provided evidence of a medical marijuana card effective several years after his alleged disability began and decades after his marijuana use began. The ALJ was also concerned about Padrta's evasiveness over his marijuana use. The evasiveness reason is not undermined by Padrta's late renewal of his card. I see no error in the Appeals Council's determination on the issue.

IV.    Step Three Findings

Padrta contends the ALJ erred when making several of the step three findings: (1) mild restrictions in his activities of daily living; (2) moderate limitations in social functioning; and (3) moderate limitations in concentration, persistence, or pace. Padrta also claims the ALJ did not adequately explain his evaluation of the combined effect of Padrta's impairments.

The Commissioner argues Padrta misstates the ALJ's findings and reasoning concerning Padrta's social functioning limitations and fails to provide any supporting argument for the limitations in the other two areas. Moreover, the Commissioner notes Padrta does not present any theory of how his impairments could be combined to meet or equal a listed impairment in step three.

More importantly, Padrta did not prevail in any of his previous arguments which would have increased his limitations, if successful. I see nothing in the record on which I could conclude the ALJ erred in making the step three findings.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards.  For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this _____25th_____ day of March, 2014.

_____/s/ Garr M. King_____
Garr M. King
United States District Judge